**In re Nancy and Vincent GINCASTRO, Debtors.**

**Nancy and Vincent GINCASTRO, Plaintiffs,**

v.

**FAIRLAWN CREDIT UNION, Defendant.**

**Bankruptcy No. 8400461.**

United States Bankruptcy Court, D. Rhode Island.

April 26, 1985.

William F. Hague, Jr., Dick & Hague, Ltd., Providence, R.I., for Fairlawn Credit Union.

John Rao, Rhode Island Legal Services, Providence, R.I., for debtors.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the debtors' objection to a claim filed by Fairlawn Credit Union, which holds a mortgage on the debtors' home, for arrearages in the amount of $1,591, plus post-petition interest. The debtors object to the allowance of Fairlawn's secured claim, to the extent that it includes interest on the arrearage. At issue is whether the creditor is entitled to (1) post-petition interest on a claim secured by the debtors' residence; and/or (2) interest on payments to be made under the plan to cure a default. For the following reasons, we answer in the negative to the first question, and affirmatively as to the second.

The relevant facts are briefly summarized as follows:[1] On August 7, 1984, when Nancy and Vincent Gincastro filed their joint Chapter 13 petition they were several months behind on their home mortgage payments. Included in their plan is a provision to cure the mortgage default by treating the arrearage as an unsecured priority claim. Fairlawn filed an objection to confirmation on the ground that the plan fails to provide for payment of interest on the arrearage, and subsequently Fairlawn filed the instant proof of claim, which also includes interest on the pre-petition arrearage. A hearing on Fairlawn's objection to confirmation commenced on October 4, 1984, but was discontinued pending our decision herein on the debtors' objection to Fairlawn's claim.

Sections 506(b), 1322(b)(2) and (5), and 1325(a)(5)(B) of the Bankruptcy Code,[2] which deal with the issues under consideration, present hazy distinctions which have caused more than a few courts to reach different results. *See In re Carr*, 32 B.R. 343 (Bankr.N.D.Ga.1983) (no interest on defaults cured through the plan unless the contract provides for interest on defaulted payments). *But see In re Thorne*, 34 B.R. 428 (Bankr.E.D.Tenn.1983) (interest at the contract rate to compensate for deferred payments under the plan); *accord Matter of Stratton*, 30 B.R. 44 (Bankr.W.D.Mich. 1983). *See In re Webb*, 29 B.R. 280 (Bankr. E.D.N.Y.1983) (interest at the market rate

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rules 9014 and 7052.

2. This and all references hereafter are to the Bankruptcy Code, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (enacted July 10, 1984).

to compensate for deferred payments under the plan); *accord In re Marx,* 11 B.R. 819 (Bankr.S.D.Ohio 1981).

Section 506(b) provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Sections 1322(b)(2) and (5) provide in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .;

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Finally, section 1325(a)(5) provides in pertinent part:

Confirmation of plan

(a) [T]he court shall confirm a plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;

In the case at bar, Fairlawn is a fully secured creditor (the debtors' schedules list the house at a value of $28,000, and the mortgage balance at less than $23,000). The note calls for interest on the principal at 13.5% and permits acceleration of the entire balance upon default. The disputed portion of Fairlawn's claim amounts to $1,591 (four months' unpaid installments ($918), plus taxes ($673) advanced on the debtors' behalf), and Fairlawn requests that post-petition interest be added to this amount.

 Section 506(b) discusses the extent to which post-petition interest may be included as part of an allowed secured claim. It provides, among other things, that an oversecured creditor is entitled to receive interest as provided in the contract.[3] *See In re Simpkins,* 16 B.R. 956, 965 (Bankr.E.D.Tenn.1982); *In re Caudle,* 13 B.R. 29 (Bankr.W.D.Tenn.1981); *see also* 3 *Collier on Bankruptcy,* ¶ 506.05 (15th ed. 1985) at 506–37 through 506–49. The contract in this instance provides for interest only on the principal, and not on accrued arrearage, or on tax payments advanced on the debtors' account.[4] Therefore, we see no contractual basis for allowing interest on the arrearage. *See In re Webb, supra; In re Evans,* 20 B.R. 175 (Bankr.E.D.Pa.1982); *In re Simpkins, supra; see also Levy v. Forest Hills Associ-*

---

**3.** Most courts have used the contract rate of interest, but a few courts, in relative isolation, have computed interest at rates other than the contract rate. *See, e.g., In re Minguey,* 10 B.R. 806 (Bankr.W.D.Wis.1981); *In re Marx, supra,* at 820–22. As *Collier* points out, however, these courts have misconstrued the distinctions between §§ 506(b) and 1325(a)(5)(B), confusing interest payments due under the contract with interest due on payments made under the plan. *See* 3 *Collier on Bankruptcy* ¶ 506.05 (15th ed. 1985) at 506–43.

**4.** *See In re Webb, supra,* at 284 for comparison. The note in that case provided for the payment of additional interest on all interest and late charges accrued after default. While the court in *Webb* held such contract provisions to be invalid under New York state law, which prohibits charges of interest upon interest, the discussion provided in *Webb* illustrates that the § 506(b) inclusion of interest on arrearages is appropriate where state law does not prohibit such charges, and the contract specifically provides for them.

*ates (In re Forest Hills Associates)*, 40 B.R. 410 (Bankr.S.D.N.Y.1984) (secured creditor is entitled to receive simple interest at the contract rate only on installments of principal). For this reason Fairlawn's claim is disallowed to the extent that it includes such interest.

A creditor's rights with respect to payments made under a chapter 13 plan are subject to altogether different considerations, however, including provisions relating to cram down and confirmation. *See In re Simpkins, supra*, at 965. *See also* §§ 1322 and 1325. To distinguish the fixing of a secured claim from the cure of default under a plan, consider the instant situation. Here the debtors are $1,591 in arrears, and have been in such default for more than seven months. The amount of the secured claim, determined under § 506(b), does not include seven months' additional interest on the arrearage because the contract provides for interest only on principal, and not for interest on interest or other charges, which compose the bulk of the arrearage in question. *See Vanston Bondholders Protective Com. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). But once the amount of the secured claim is fixed (at $1,591) and payments are to commence under the Chapter 13 plan, the "present value" test of 11 U.S.C. § 1325(a)(5)(B)(ii) is appropriate. That section states that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such [allowed secured] claim is not less than the allowed amount of such claim." We understand this to require the debtor to pay interest (or its equivalent) on the claim, to reflect the present value of deferred payments to be made under the plan.

Although courts differ as to the proper rate of interest to be applied under § 1325(a)(5)(B)(ii) (whether market, legal, or contract), there is general agreement that a fully secured creditor (as determined by § 506(b)), is entitled to interest on arrearages paid through the plan. The fact that the claim is a long-term debt secured only by a debtor's principal residence, does not alter this principle. *See In re Pearson*, 4 C.B.C.2d 57, 10 B.R. 189 (E.D.N.Y.1981); *In re Hartford*, 3 C.B.C.2d 761, 7 B.R. 914 (D.Me.1981).[5]

The debtors argue, however, that §§ 1322(b)(2) and (5) permit them to cure the default without paying interest on the arrearage. They contend that § 1325(a)(5)(B)(ii) should not apply, because "the awarding of interest would constitute modification of the contract in contradiction to § 1322(b)(2)." Debtors' Memorandum at 6 (quoting *In re Carr, supra* at 345). The only court to endorse this theory, to our knowledge, is the Georgia bankruptcy court in *In re Carr, supra*, on which the debtors rely. We disagree with the holding in *Carr* because it appears to be based on language taken out of context from another case, *In re Simpkins*, where Judge Kelley commented: "[t]he time-value of money is irrelevant. The court re-emphasizes that § 1322(b)(2) creates a special exception to § 1325(a)(5)(B)." *In re Carr, supra* at 344 (quoting *In re Simpkins, supra* at 965). It appears to us that *Carr* misconstrued this statement to mean that payment of interest on defaults cured through the plan would impermissibly modify the rights of a creditor secured only by the debtor's principal residence. That broad conclusion is not stated or implied in *Simpkins*. *In re*

---

**5.** Note that § 506(b), which calls for the contract rate of interest in determining the amount of the secured claim, has no application in the context of § 1325(a)(5)(B), which ensures that the secured creditor receive the present value of the deferred payments to be made under the plan. In fixing the interest rate to be applied to Chapter 13 claims, courts employ a variety of approaches. Among the factors considered are the prevailing market rate of interest, the legal rate, the credit worthiness of the debtor, and the nature of the collateral. *See, e.g., In re Kauffun-*

*ger*, 16 B.R. 666 (Bankr.D.N.J.1981). *See also* 3 *Collier on Bankruptcy* ¶ 506.05 (15th ed. 1985) at 506–43. *See In re Anderson*, 28 B.R. 628 (S.D. Ohio 1982); *In re Hibbert*, 14 B.R. 891 (Bankr.E. D.N.Y.1981); *In re Caudle, supra; Matter of Cooper*, 7 B.R. 537 (Bankr.N.D.Ga.1980). *But see Matter of Stratton, supra*, and *In re Simpkins, supra*, (compensation for deferred payments under the plan is controlled by the *contract* rate where the claim is protected from modification by § 1322(b)(2)).

*Simpkins* narrowly held that, as between the market or contract rate of interest, the contract rate is the appropriate interest rate to be applied to defaults cured through the plan, because of § 1322(b)(2). Whatever latent confusion *Simpkins* may have provoked, it is dispelled in Judge Kelley's later decision, *In re Thorne, supra,* in which he concluded that, although the contract did not call for interest on arrearages, a secured creditor is entitled to receive interest at the contract rate on payments made through the plan. The holding in *Carr,* therefore, offers no support for the debtors' position, since it is premised on a misinterpretation of *Simpkins,* and stands in isolation from all other decisions on this issue which have uniformly held that on deferred payments to cure default, interest is allowed.

Having concluded that Fairlawn is entitled to interest on arrearages paid under the plan, the next question is: interest at what rate? Although a few courts (*Thorne, Stratton*) have awarded interest at the contract rate, on the theory that any other rate would modify the creditor's contract rights protected by § 1322(b)(2), we think this reasoning ignores § 1322(b)(5) which permits the cure of default "notwithstanding [the provisions of] paragraph (2) of this subsection...."

Section 1322(b)(2) provides that the plan may not modify the rights of holders of claims secured only by an interest in the debtor's principal residence. Section 1322(b)(5), however, allows a debtor to maintain regular payments and to cure any default within a reasonable time under the plan, notwithstanding § 1322(b)(2). Because the cure of a default is a permissible modification of the creditor's rights, it follows that interest on payments under the plan is likewise a permissible modification. Accordingly, we hold that the contract rate called for in the note is irrelevant in this context, because the purpose of any award of interest under § 1325(a)(5)(B)(ii) is to ensure that the secured creditor receives the present value of the claim. Interest should be awarded at a rate at which Fairlawn could earn interest if it received the cash equivalent of its claim on the effective date of the plan. *See American Bank v. Coburn (Matter of Coburn),* 36 B.R. 550 (Bankr.W.D.Mo.1983); *In re Webb, supra; In re Klein,* 10 B.R. 657 (Bankr.E.D.N.Y. 1981).

In conclusion, Fairlawn Credit Union's claim is allowed in the amount of $1,591, and the debtors are ordered to amend their plan to provide for interest on the arrearage at the rate of 13.5%,[6] which we feel best reflects the present value of payments to be made under the plan.

Enter judgment accordingly.

---

**6.** Although we have concluded that the contract rate does not control the rate of interest to be applied pursuant to § 1325(a)(5)(B), the contract rate in this instance happens to be about the same as the prevailing market rate, and seems appropriate in this proceeding.